Recpt # 5722AA

14

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

THOMAS STEPHENS, NOLA STEPHENS,
and JOHN and JANE DOES #1-47

    Plaintiffs,

vs.

BASIN OIL & GAS CORPORATION, a
Kentucky corporation,
THOMAS R. WATKINS, an individual, and
JAMES R. CROWLEY, an individual,

    Defendants.

Civil Action No. 05-60189

JOHN CORBETT O'MEARA

MAGISTRATE PEPE

---

Andrew J. McGuinness (P42074)
Stephen C. Borgsdorf (P67669)
Attorneys for Plaintiffs
DYKEMA GOSSETT PLLC
2723 South State Street, Suite 400
Ann Arbor, MI 48104
(734) 214-7660



FILED

AUG - 5 2005

CLERK'S OFFICE
U.S. DISTRICT COURT
ANN ARBOR, MI

## COMPLAINT AND JURY DEMAND

Plaintiffs, by and through their attorneys DYKEMA GOSSETT PLLC, state the following complaint against Basin Oil & Gas Corporation, Thomas R. Watkins, and James R. Crowley.

### Introduction

1. Plaintiffs bring this action to secure redress for a course of conduct by Defendants of omitting material information from their sales of unregistered securities, consisting of fractional interests in oil and gas leases, in violation of Federal Securities laws, including 15 U.S.C. § 78j(b), and in violation of Kentucky's blue-sky laws. K.R.S. § 292, *et seq.*

## Jurisdiction and Venue

2. This Court has jurisdiction under 28 U.S.C. § 1331 over the federal securities law claims, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the Kentucky blue sky claims.

3. Venue in this District is proper pursuant to 15 U.S.C. § 78aa because Defendants do business in this District, and the offer to sell securities to Thomas and Nola Stephens giving rise to the violations of law complained of was directed to and received in this District.

## Parties

4. Thomas Stephens and Nola Stephens (the "Stephens") are husband and wife, residing at all pertinent times at 2500 Woodstock, City of Detroit, County of Wayne, State of Michigan.

5. John and Jane Does, numbered 1 through 47, are unknown persons who, since August 2002, purchased fractional interests in oil and gas wells sold by Basin Oil & Gas Corporation, whose identities will be ascertained upon discovery.

6. Defendant Basin Oil & Gas Corporation ("Basin") is a Kentucky corporation, with a principal place of business at 129 Industrial Park Drive, Livingston, Tennessee 38570. At all relevant times, Basin's principal place of business was 207 East Reynolds Road, Suite C, Lexington, Kentucky 40517.

7. Upon information and belief, Defendant, Thomas R. Watkins, is a Kentucky citizen, with a principal residence at 1190 Happy Top Road, Clay City, Kentucky 40312.

8. Thomas R. Watkins ("Watkins") is President, owner, and registered agent of Basin.

9. Upon information and belief, James R. Crowley ("Crowley") is a Kentucky citizen, and an employee of Basin.

2

10. Upon information and belief, Basin, Watkins, and Crowley each sold unregistered securities consisting of fractional interests in oil and gas leases (the "Units") directly to Plaintiffs pursuant to a common scheme. Defendants each conspired to sell unregistered securities, to omit material information, and to mislead investors through artifice and fraud, as alleged herein.

### **Facts**

11. In early 2003, Defendants solicited the purchase of Units by Mr. Thomas Stephens, making such solicitations by telephone, U.S. Postal Service, and Federal Express to the Stephens' home address in Detroit, Michigan.

12. Pursuant to Defendants' common scheme, Basin sent to the Stephens a packet of information to their home address in Detroit, consisting of trade publications, topographic maps, and a "Joint Venture Subscription Agreement."

13. On or about March 10, 2003, in reliance on the oral and written representations of Defendants, and ignorant of material information withheld by Defendants, the Stephens signed a Joint Venture Subscription Agreement ("Subscription Agreement") with Basin, purporting to form a limited partnership with Basin through the purchase of a working interest in two oil wells, identified as "Linda Brown #1" and "Ostil Paul #24".

14. Pursuant to the Subscription Agreement, on March 27, 2003, Thomas Stephens wrote Basin a check drawn on his and Nola's joint account in Michigan in the amount of $4,687.50 for a fractional interest in oil wells Linda Brown #1 and Ostil Paul #24. He deposited the check in a U.S. Postal drop box in Detroit, Michigan, in an envelope addressed to Basin.

15. On April 9, 2003, Watkins sent a letter to Thomas Stephens at his Detroit address in which Watkins represented that the drilling of Linda Brown #1 resulted in a commercial oil well. Watkins requested that the Stephens' pay an additional $1,125.00 in "completion expense."

16. On April 16, 2003, in reliance on Defendants' representations, Thomas Stephens wrote Basin a check drawn on his and Nola's joint account in Michigan in the amount of $1,125.00, and placed this check in a U.S. Postal drop box in Detroit, Michigan in an envelope addressed to Basin.

17. On April 24, 2003, Crowley called Thomas Stephens in Detroit, Michigan, to solicit an additional investment in Basin oil wells "Bobby Gunter #1" and "Linda Brown #2," stating that Basin expected to hit two big wells and was keeping a large portion of the interest, but letting some of its current investors in on the deal.

18. Crowley, on behalf of Basin, and under the direction and supervision of Watkins, told Mr. Stephens that it was a no-risk, can't miss investment.

19. Crowley stated that, for an investment of 1/16 interest, or $18,750.00, the average payout would be $3,031.11 per month for each well. Crowley represented that Basin's Robert Wright #2 well sits on one of the biggest oil reservoirs in the United States.

20. Unbeknownst to the Stephens, the statement about the Robert Wright #2 was not true. In fact, the Robert Wright #2 was plugged in March 2003.

21. Basin, Watkins, and Crowley sent to the Stephens, at their home in Detroit, Michigan, a Subscription Agreement for Bobby Gunter #1 and Linda Brown #2, but did not send a prospectus, private placement memorandum, schedule of use of investor funds, assessment of risk, drilling history of Basin, or other material information.

22. On or about April 24, 2003, in reliance on Defendants' representations, and ignorant of the omitted material information, the Stephens signed a second Subscription Agreement with Basin, purporting to form a limited partnership with Basin through purchase of a working interest in Bobby Gunter #1 and Linda Brown #2.

4

23. On or about April 25, 2003, Nola Stephens wrote Basin a check drawn on her IRA account in Detroit, Michigan, in the amount of $18,750.00 for a 6.25% interest in oil wells Bobby Gunter #1 and Linda Brown #2. Mrs. Stephens deposited this check in a U.S. Postal drop box in Detroit, Michigan, in an envelope addressed to Basin.

24. In May 2003, Crowley telephoned Mr. Stephens at his Detroit, Michigan residence and represented that Mr. Stephens had another producing well in Linda Brown #2. Crowley advised Mr. Stephens to invest some of his forthcoming monthly royalty money in Linda Brown #3.

25. On June 2, 2003, Crowley wrote to Mr. Stephens at his address in Detroit, Michigan, urging him to "fill out subscription agreement and get your check in ASAP," stating that "this looks good."

26. On June 3, 2003, in reliance on Defendants' representations, Nola Stephens wrote Basin a check drawn on her IRA account in Detroit, Michigan, in the amount of $18,750.00 for a 6.25% interest in oil wells "Myrna Bayer # 1" and "Linda Brown #3." Mrs. Stephens deposited this check in a U.S. Postal drop box in Detroit, Michigan, in an envelope addressed to Basin.

27. In June 2003, Watkins informed Mr. Stephens that Basin would abandon Linda Brown #2 for low production. On June 23, 2003, Crowley represented to Mr. Stephens that he and his crew would get the Linda Brown #2 back into production and not to worry. Crowley stated that his team would use tension packers to isolate water, that Basin has some of the best crews and one of the best geologists in the business, and that he and his team did not just cap a well site and walk away, but seek and find creative solutions to get wells into production.

28. On July 8, 2003, Basin wrote Thomas Stephens a check in the amount of $403.24. Mr. Stephens received this check at his Detroit, Michigan residence.

29.     On or about August 7, 2003, Mr. Stephens received letters from Basin advising that drilling for Linda Brown #3 and Myrna Bayer #1 resulted in dry holes.

30.     On or about August 7, 2003, Mr. Stephens received a letter from Watkins advising that the Linda Brown #1 had stopped producing oil.

31.     On September 22, 2003, Mr. Stephens spoke with Watkins and requested an Authorization for Expenditure (AFE). Mr. Watkins refused to disclose this information.

32.     On September 24, 2003, Basin wrote to Mr. Stephens to confirm that his total investment for 2003 was $43,312.50.

33.     On November 7, 2003, Basin wrote Mr. Stephens a check in the amount of $34.64.

34.     On December 31, 2003, Mr. Stephens wrote a letter to Basin asking for a refund. In sum, Thomas and Nola Stephens invested $43,312.50 for fractional interests in oil wells with Basin, and for this investment, the Stephens received $437.88.

35.     On January 6, 2004, Basin responded by letter refusing any refund. In this letter, Watkins—for the first time—represented investments in Basin as "high-risk investments" and "a gamble."

36.     On February 17, 2004, Capital Guardian Inc. sent a letter on behalf of Basin to Mr. Stephens, threatening legal action in Fayette County, Kentucky, to recover legal fees and "for loss of all expenses and loses [sic] which the Company, the project and its investors-each and every one of them-sustained as a result of your legal actions."

37.     Basin and Watkins have a history of trouble with state securities regulatory agencies. It appears that seven state regulators have issued orders against Basin and/or Watkins

and his salespeople, finding that the "working interests" in Basin oil and gas leases are securities required to be registered under state blue sky laws. These orders are as follows:

- (a) *In the Matter of Basin Oil & Gas Corporation, et al.*, CD-01-04; Missouri Commissioner of Securities; March 9, 2001;

- (b) *In the Matter of Basin Oil & Gas Corporation and Tom Watkins*, 0106-20; Pennsylvania Securities Commission; June 29, 2001;

- (c) *Tennessee Securities Division v. Basin Oil and Gas Corp, Michael Smith and Thomas Watkins*; No. 01-006; Commissioner of Commerce and Insurance for the State of Tennessee, August 17, 2001;

- (d) *In the Matter of Basin Oil & Gas Corporation*, S-01125(EX); Wisconsin Division of Securities, Dep't of Financial Institutions; April 1, 2002;

- (e) *In the Matter of Basin Oil & Gas Corporation*, SEC 2002-00014; Virginia Division of Securities and Retail Franchising, State Corporation Comm'n; May 23, 2002;

- (f) *In the Matter of Basin Oil & Gas Corporation, et al.*, S-03-033-03 CD01; Arkansas Securities Dep't; October 1, 2003.

- (g) *In the Matter of Basin Oil & Gas Corporation, Thomas Watkins and Matt Walters*; Case No. 05-0031 CD; Indiana Secretary of State, Securities Division; April 18, 2005

38. Basin and Watkins have attempted to justify their sales of unregistered securities by styling them as "private placements" exempt from registration under Regulation D. 17 C.F.R. § 501, et seq.

39. Thomas and Nola Stephens, as well as the John and Jane Doe investors, are not "Accredited Investors" within the meaning of 17 C.F.R. § 230.501(a), and so Regulation D does not apply to Basin, Watkins, and Crowley's sales of unregistered securities.

40. Basin, Watkins, and Crowley knew about these orders from State regulators, but they did not inform Mr. Stephens of any of them while they were soliciting the Stephens to purchase the Units.

41. Mr. and Mrs. Stephens, as well as the John and Jane Doe investors, were unaware of the cease-and-desist orders against Basin and Watkins.

42. Had they known that the fractional interests in oil and gas leases were being sold in violation of federal and state law, Thomas and Nola Stephens, as well as the John and Jane Doe investors, would not have purchased the securities from Defendants.

### COUNT I:    Violation of the Securities Exchange Act of 1934

43. Plaintiffs incorporate paragraphs 1 through 42 as though fully restated here.

44. After piquing Mr. Stephens' interest in investing in fractional interests in oil and gas wells, Basin, Watkins, and Crowley sent Mr. Stephens a Subscription Agreement.

45. Upon information and belief, this is a standard form agreement that Defendants used with investors.

46. Among other things this Subscription Agreement states: "This investment has not been registered under the Securities Act of 1933 (the '33 Act') or any comparable state securities laws and cannot be resold unless either registered under said laws or an exemption from such registration is available."

47. Section 10(b) of the Securities Exchange Act of 1934 forbids the use or employment of any deceptive device in connection with the purchase or sale of any security, in contravention of Securities and Exchange Commission ("SEC") rules and regulations.  15 USC § 78j(b).

48. SEC Rule 10b-5 forbids, among other things, the making of any untrue statement of material fact or the omission of any material fact necessary in order to make the statements made not misleading.  17 CFR § 240.10b-5 (2004).

49. Basin, Watkins, and Crowley affirmatively represented that the investment in Basin Units need not be registered with knowledge that several states had issued cease-and-desist orders regarding the sale of unregistered securities. These representations are material misstatements or omissions used in connection with the sale of the Units.

50. Basin, Watkins, and Crowley intended to deceive potential investors by failing to reveal this material information.

51. Upon information and belief, Defendants made identical material omissions in the sale of Units to the John and Jane Doe investors.

52. Basin, Watkins and Crowley intended to deceive Mr. and Mrs. Stephens, and defraud them of their money, by making knowingly fraudulent statements regarding Basin's efforts to get and keep oil wells in production.

53. Upon information and belief, Basin, Watkins, and Crowley made similar or identical intentional misrepresentations to the John and Jane Doe investors.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against defendants for rescission and restitution of all funds invested in violation of Federal Securities law, as set forth above, interest at the legal rate, plus costs and attorneys fees.

### COUNT II:   Violation of Kentucky Blue Sky Law

54. Plaintiffs incorporate paragraphs 1 through 53 as though fully restated here.

55. Basin's fractional interests in oil and gas wells are "securities" within the meaning of the Kentucky Blue Sky Law, KRS 292.310(18).

56. Defendant never registered these securities, and no exception to the registration requirements of Kentucky's Blue Sky law applies to these securities.

57. Basin is not licensed as a "broker-dealer" of securities in Kentucky, and the Kentucky Department of Financial Institutions filed for and received an injunction barring Basin from selling securities in the State of Kentucky.

58. Basin has engaged in a pattern and practice of selling unregistered fractional interests in oil and gas wells in violation of Kentucky Blue Sky law.

59. Watkins and Crowley are not authorized by the State of Kentucky to sell securities such as the Basin Units.

60. Basin, Watkins, and Crowley have sold unregistered fractional interests in oil and gas wells to other consumers in violation of Kentucky Blue Sky, which prohibits selling or offering to sell an unregistered security. KRS 292.340.

61. Any person who sells or offers to sell an unregistered security is liable to the person buying the security from him, who may sue at law or in equity to recover the consideration paid for the security, together with interest at the legal rate from the date of payment costs and reasonable attorney's fees, less the amount of income received on the security. KRS 292.480(1).

62. These rights and remedies are in addition to any other rights or remedies that exist at law or equity. KRS 292.480(7).

63. Thomas Stephens, Nola Stephens, and the other John and Jane Doe investors were all sold securities in violation of Kentucky's blue sky laws, because Basin, a Kentucky Corporation, and its principals, officers, and agents including Watkins and Crowley sold and offered to sell unregistered securities from their offices in Kentucky.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against Defendants for rescission plus interest, with costs and attorneys fees.

### Count III:  Breach of Contract

64. Plaintiffs incorporate paragraphs 1 through 63 as though fully restated here.

65. The relationship between Basin and Mr. and Mrs. Stephens was governed by various written contracts called Subscription Agreements.

66. These contracts were drafted by Basin.

67. In each contract, Basin agreed "to operate with regard to the lease and the well in accordance with all valid applicable Federal, State, and local laws, including, but not limited to, oil and gas regulatory laws, environmental laws, safety laws, **securities laws** and energy laws..." (emphasis supplied).

68. Basin's covenant to operate in accordance with the applicable laws is a material provision of the contracts.

69. By failing to register the securities for sale, Basin omitted material information and so materially breached its contract with Mr. and Mrs. Stephens.

70. Upon information and belief, Basin materially breached its agreements with the John and Jane Doe investors in the same way.

71. As a foreseeable consequence of these breaches, Mr. and Mrs. Stephens as well as the John and Jane Doe investors lost much or all of their investment with Basin.

72. Mr. and Mrs. Stephens and the John and Jane Doe investors were induced to enter the contracts with Basin due to the material misrepresentations by Basin, Watkins, and Crowley.

73. Mr. and Mrs. Stephens and the John and Jane Doe investors were justified in relying upon the representations by Basin, Watkins, and Crowley, and in believing that Basin, Watkins, and Crowley were not failing to disclose material information.

74. The material misrepresentations and omissions by Basin, Watkins, and Crowley make the contracts voidable at the option of Mr. and Mrs. Stephens, as well as at the option of the John and Jane Doe investors.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against Defendants for rescission plus interest, together with costs and attorneys fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this court enter judgment in favor of Plaintiffs and jointly and severally against each Defendant for rescission of all sales of unregistered securities from Basin, plus interest, Plaintiffs' costs and expenses in this action, reasonable attorney's fees incurred in this action, and such other relief as the Court may deem just and equitable.

### DEMAND FOR TRIAL BY JURY

Plaintiffs demand a jury trial as to all issues so triable.

Respectfully submitted,

DYKEMA GOSSETT PLLC

By: _____
Andrew J. McGuinness (P42074)
Stephen C. Borgsdorf (P67669)
DYKEMA GOSSETT PLLC
Attorneys for Plaintiffs
2723 South State Street, Suite 400
Ann Arbor, MI 48104
(734) 214-7663

Date: August 5, 2005

**05-60189   JOHN CORBETT O'MEARA**

JS 44 11/99  **CIVIL COVER SHEET**   COUNTY IN WHICH THIS ACTION AROSE: _Wayne County_

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.

### I. (a) PLAINTIFFS
THOMAS STEPHENS, NOLA STEPHENS, and JOHN and JANE DOEs #1-47

### DEFENDANTS
BASIN OIL & GAS CORPORATION, a Kentucky corporation, THOMAS R. WATKINS, an individual, and JAMES R. CROWLEY, an individual

(b) County of Residence of First Listed Plaintiff: Wayne County, MI

County of Residence of First Listed Defendant: Overton County, TN

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

(C) Attorneys (Firm Name, Address, and Telephone Number)
Andrew J. McGuinness (P42074) & Stephen Borgsdorf (P67669)
Dykema Gossett PLLC
2723 S. State St., Suite 400, Ann Arbor, MI 48104; (734) 214-7660

Attorneys (If Known):

### II. BASIS OF JURISDICTION (Place An "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place An "X" in One Box For Plaintiff and One Box For Defendant) (For Diversity Cases Only)

|  | PLA | DEF |  | PLA | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

CONTRACT: ☐ 110 Insurance, ☐ 120 Marine, ☐ 130 Miller Act, ☐ 140 Negotiable Instrument, ☐ 150 Recovery of Overpayment & Enforcement of Judgment, ☐ 151 Medicare Act, ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans), ☐ 153 Recovery of Overpayment of Veteran's Benefits, ☐ 160 Stockholders' Suits, ☐ 190 Other Contract, ☐ 195 Contract Product Liability

TORTS — PERSONAL INJURY: ☐ 310 Airplane, ☐ 315 Airplane Product Liability, ☐ 320 Assault, Libel & Slander, ☐ 330 Federal Employers' Liability, ☐ 340 Marine, ☐ 345 Marine Product Liability, ☐ 350 Motor Vehicle, ☐ 355 Motor Vehicle Product Liability, ☐ 360 Other Personal Injury

PERSONAL INJURY: ☐ 362 Personal Injury—Med. Malpractice, ☐ 365 Personal Injury—Product Liability, ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY: ☐ 370 Other Fraud, ☐ 371 Truth in Lending, ☐ 380 Other Personal Property Damage, ☐ 385 Property Damage Product Liability

REAL PROPERTY: ☐ 210 Land Condemnation, ☐ 220 Foreclosure, ☐ 230 Rent Lease & Equipment, ☐ 240 Torts to Land, ☐ 245 Tort Product Liability, ☐ 290 All Other Real Property

CIVIL RIGHTS: ☐ 441 Voting, ☐ 442 Employment, ☐ 443 Housing/Accommodations, ☐ 444 Welfare, ☐ 440 Other Civil Rights

PRISONER PETITIONS: ☐ 510 Motions to Vacate Sentence, HABEAS CORPUS: ☐ 530 General, ☐ 535 Death Penalty, ☐ 540 Mandamus & Other, ☐ 550 Civil Rights, ☐ 555 Prison Condition

FORFEITURE/PENALTY: ☐ 610 Agriculture, ☐ 620 Other Food & Drug, ☐ 625 Drug Related Seizure Of Property 21 USC 881, ☐ 630 Liquor Laws, ☐ 640 R.R. & Truck, ☐ 650 Airline Regs., ☐ 660 Occupational Safety/Health, ☐ 690 Other

LABOR: ☐ 710 Fair Labor Standards Act, ☐ 720 Labor/Mgmt. Relations, ☐ 730 Labor/Mgmt. Reporting & Disclosure Act, ☐ 740 Railway Labor Act, ☐ 790 Other Labor Litigation, ☐ 791 Empl. Ret. Inc. Security Act

BANKRUPTCY: ☐ 422 Appeal 28 USC 158, ☐ 423 Withdrawal 28 USC 157

PROPERTY RIGHTS: ☐ 820 Copyrights, ☐ 830 Patent, ☐ 840 Trademark

SOCIAL SECURITY: ☐ 861 HIA (1395ff), ☐ 862 Black Lung (923), ☐ 863 DIWC/DIWW (405(g)), ☐ 864 SSID Title XVI, ☐ 865 RSI (405(g))

FEDERAL TAX SUITS: ☐ 870 Taxes (U.S. Plaintiff or Defendant), ☐ 871 IRS — Third Party 26 USC 7609

OTHER STATUTES: ☐ 400 State Reapportionment, ☐ 410 Antitrust, ☐ 430 Banks and Banking, ☐ 450 Commerce/ICC Rates/etc., ☐ 460 Deportation, ☐ 470 Racketeer Influenced and Corrupt Organizations, ☐ 810 Selective Service, ☒ 850 Securities/Commodities/Exchange, ☐ 875 Customer Challenge 12 USC 3410, ☐ 891 Agricultural Acts, ☐ 892 Economic Stabilization Act, ☐ 893 Environmental Matters, ☐ 894 Energy Allocation Act, ☐ 895 Freedom of Information Act, ☐ 900 Appeal of Fee Determination Under Equal Access to Justice, ☐ 950 Constitutionality of State Statutes, ☐ 890 Other Statutory Actions

### V. ORIGIN (Place An "X" in One Box Only)
☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
(Cite The US Civil Statute Under Which You Are Filing And Write A Brief Statement Of Cause. Do Not Cite Jurisdictional Statues Unless Diversity)

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND _____
CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No

### VIII. RELATED CASE(S) (See instructions)
JUDGE _____   DOCKET NUMBER _____

DATE: August 5, 2005

SIGNATURE OF ATTORNEY OF RECORD: Andrew J. McGuinness (P42074)

PURSUANT TO LOCAL RULE 83.11

1. Is this a case that has been previously dismissed?  ☐ Yes  ☒ No

    If yes, give the following information:

    Court: _____

    Case No.: _____

    Judge: _____

2. Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)  ☐ Yes  ☒ No

    If yes, give the following information:

    Court: _____

    Case No.: _____

    Judge: _____

Notes: _____